Our next case this morning is number 242223 Metrom Rail v. Siemens Mobility. Okay, Mr. Chaudhry. Thank you, Your Honor. And if I may reserve five minutes for rebuttal. My timer's at 15. Well, we'll see. All right. You use it up, you use it up. Go ahead. Thank you, Your Honor. May it please the Court. The Board erred by deciding there was no nexus to any objective indicia, which included copying, but declined to consider that evidence at all. Nothing illustrates that error better than the Board's analysis of Claim 7 of the 227 patent. You can find that in the 227 Final Written Determination at Appendix 140 to 45. That claim is where our nexus and objective indicia evidence was at its peak, but the Board did no analysis, relying solely on its nexus findings, which were driven by a faulty reading of this Court's precedents, particularly ORMCO and EDA. The Board's decisions on Claims 2 through 4 must also be reversed because the implied construction of the tracking a location to mean any tracking with no precision at all is not a plausible reading or claim interpretation of Claim 2. Two things must be deemed conceded by the petitioner. First, the only grounds raised were Section 103 challenges. There was no novelty challenge in this case. You can find that in the appendix at pages 4920 through 30. Second, there was no declarative or counterfactual evidence offered by the petitioners other than argument on the merits of our copying, praise, long felt need, or commercial success objective indicia. Okay, so the problem is your own president testified that the commercial product had features that weren't in the patent. And he testified, if I recall correctly, that those were not insignificant features. And so under Fox Factory, it would seem to be difficult to establish nexus with that testimony. Yeah, under Fox Factory, they found that the only feature that was contributing to the success was claimed in a different patent and was not claimed in the patent in Fox Factory. So I think it's distinguishable on that basis. But the questions that were asked were, is it an important feature? Is it a feature that customers appreciate or find important? There was no relative analysis in that as to how important that feature was to the feature of the invention, which is collision avoidance. And the testimony was consistent by everyone that the headline feature here is a collision avoidance system that is formed by the combination of limitations that you arrive at at the claim. And the combinations that were asserted in these claims were never claimed to be anticipated, only obvious. And under Graham, you have to reach the objective indicia in that circumstance. And you can find that testimony regarding the critical feature being the system claim or the combination of elements in the appendix. You can find it at Appendix 4195. That's the Kochlev Declaration. 4169, that's the Gunther Declaration. 4159, that's the Marche Declaration. You can find it in Mr. Marche's testimony at 4806 through 07. That's the Marche Deposition. You can also find it in the Gunther Deputy Appendix 4576. The customers are looking for collision avoidance. The Gunther Deposition at 4554. The invention is essentially collision avoidance. All of that evidence is not challenged by the petitioners factually. They only argue on the nexus point. And then they point to some features that a customer says is important. Well, you have to weigh that relative to the headline feature, which is collision avoidance, which is provided by the combination of the claim. And that was unique in the industry at the time. There was nothing like the ORAS system until we came along and introduced it. It is in the niche of this maintenance-of-way collision avoidance area. But nevertheless, there was nothing comparable to it before. And the only thing to come along since that competes directly with it is the petitioner's helix system, which we allege, and they never met this head-on in reply, is a copy of our system. And so for that reason, they should have found a nexus, should have considered the objective indicia, which all point to non-obviousness. Three things. First, nexus should have been presumed in this case. Our claims cover the product. The product embodies the claims. The patent was written to cover it. The testimony on that was unrefuted. Right, but just to be clear, so many lawyers seem to have a problem with this, and I don't understand why there's a problem. The fact that claims cover something does not mean that the thing is coextensive with the claims. Everything, for example, you could have a claim that requires one teeny little thing, and a multi-accused thing, a product has many, many features. Well, that many, many featured product would be covered by the claim. It wouldn't be coextensive. So you just use three different versions of the claim covers of it. It's written to cover it. That doesn't mean coextensiveness. Sure, and I think where you see this, Your Honor, is in the, DeMarco is the leading, you know, the case that I would refer back to on this, where the claim covered a, I believe it was a construction brick, and the claim was written to cover the brick. The product and the claim were coextensive. The ORA system is the same thing here. There's no larger system that ORA is a component of. But the ORA system, I thought your own presence said, had a number of features in it that were not claimed by the patent. Sure, but that's always going to be the case. I mean, there's rarely... That's why the Fox Factory, et cetera, formulation says coextensive means, you know, pretty darn close to nothing else, and in particular, nothing else significant. Right, but that's reductive, Your Honor, in the sense that now you're telling me that I've got to, if I want a coextensive claim for commercial success, I've got to write the narrowest possible claim that covers every possible feature, or I can't have a nexus. Or you just... No, it's not that you can't have a nexus. You just have to prove the nexus. Right, well then... I mean, I think all we've been talking about so far is the presumption of nexus. But you could have proved it without the presumption. Well, and I think we did to that point. Why don't you talk about that? Big pardon? Why don't you talk about that? Sure. Each of the factors, commercial success, long-felt need, skepticism in the art, copying, all is tied back to the patented product, ORA, or a feature in the claims of the patented product. And I hesitate to use feature in the claims because it leads to this analysis where you've got to prove that the feature is not obvious, which is putting the cart before the horse, so to speak. But, for example, skepticism was specifically tied to the use of radio, and specifically UWB radio, in a collision avoidance system. And there is ample testimony on that. Mr. Gunther, for example, at 4175-77 talks about the power and bandwidth concerns and interference with other radio systems used by the railway. Appendix 4602, Mr. Gunther is talking about frequency interference. Appendix 4385, there's a discussion of how UWB is a dead technology. Appendix 3452-60, Mr. Conti talks about the history of UWB in the rail and how people in this industry didn't want to use it, and how it's not in any other commercial system. At 4179, Mr. Gunther, again, no other system uses any of these things. Just a point of clarification. Is ultrawideband recited in the 131 claims at issue? It is not, but it is, as I pointed out, recited in the 227. And specifically claim 7 of the 227, which was the four claims we offered up our nexus evidence on. And that's where our nexus evidence, I think, was strongest, to your point, talking about features. But it's not just UWB, it's the combination of UWB with GPS in a collision avoidance system that has the other limitations of the claim. You can't take out any piece and then still have a collision avoidance system. For example, there is nothing in, and the claim is not anticipated by Grisham. That was their best reference. You have to heavily modify Grisham to get to the claim. There's no one embodiment in their best prior art reference that is, for example, claim 1. You know, that argument was made, but it was never asserted as a ground in the petition. And they never put in the evidentiary findings that you would need to make Grisham, turn Grisham into a 102. Instead, their expert modifies the sixth embodiment in Grisham to get to our claim. Because as it stands, that's not the invention at all. Instead, what we do is we've got the three modules. We combine the transmitter and the receiver in one. Control electronics, transponder module, user interface module with a user input, UWB, GPS. Those things all work together to give you the first workable system for this application that the industry had ever seen. Prior to this, they were using their eyeballs. After it, they were buying us. Only after we proved that it was commercially successful did they enter the market. Real briefly, because I don't want to use all my rebuttal time, on claims 2 through 4, Douglas does not have tracking a location in it. They made a legal error in terms of interpreting a limitation for tracking a location. The legal error was you cannot say that tracking a location means tracking with any precision at all. I would refer you to Douglas appendix page 203 and 2, I'm sorry. Where does the claim require precision? The specification talks about how the machinery has a range. You find that at 203, column 21, lines 32 to 47. It's not in the claim. But in context, unless you have some kind of precision, you have a meaningless system. And Douglas does not track any location at all. All it tracks is a route. If I tell you I'm walking down H Street tomorrow and my colleague is walking down 15th sometime in the future, you can say that those routes collide at some point, but you can't tell me where either one of us are. And that's all that Douglas does. And it certainly doesn't tell you where you are over time. I'm eating into my rebuttal. If there's more questions, I'll answer them. But otherwise, I'd like to save the rest of it for the cross-appeal. OK. Mr. Wisney, how are you and Mr. Sepko dividing the argument? Are you doing the main appeal and he's doing the cross-appeal? Director, I'll handle the main appeal. He'll handle the cross-appeal. May it please the Court, Your Honor. Howard Wisney on behalf of the appellee and cross-appellant. I'll handle the main appeal and Mr. Sepko will handle cross-appeal. With respect to claim, all the claims, all the independent claims except for claim 7 of the 227 patent,  claim 1 of the 131, and claim 1 of the 227, the court correctly found that Grisham taught all the requirements of the claim. The only evidence below that was even presented, argument that was presented below, was secondary considerations of non-obviousness. They conceded that Grisham taught all these requirements. As the court noted, co-extensiveness is a separate requirement to obtain a nexus for secondary considerations. No, that's not right. I apologize if I misspoke. Co-extensiveness is a basis for getting a presumption. My apologies, Your Honor. I agree. I apologize. I misspoke. With respect to the presumption, the only evidence they put in was the declaration of their expert, Kuklev. And Kuklev admitted that, in fact, he did not apply the correct test. His testimony is reproduced at page 39 of our opening brief. Question. So in your view, if a product meets all the requirements of the claim, whether or not it has additional features is irrelevant to whether it's co-extensive. Answer, yes. So he, in fact, applied the wrong test. He basically applied an infringement analysis without any sort of co-extensive analysis. And as the panel has already recognized. Why don't you talk about why the board was right, in your view, in finding that there was no nexus? Without a presumption? Yes. Yes. So because there was no presumption to be met, the patent owner still had an opportunity to try to prove a nexus. But they were required to prove that there was some sort of novel feature or inventive combination that was somehow tied to the secondary indicia of non-obviousness. They didn't do that. They just said, look at the claim. All the features in the claim are important. But there was no analysis as to these features, these important things, are what drove the commercial success. This is what led to the skepticism. The board looked in vain for this analysis, and it wasn't presented. The patent owner's counsel said, well, our best evidence is claim 7 of the 227 patent. That claim requires UWB and GPS. No one has offered testimony that that unique combination of UWB and GPS 1 was novel, not known in the prior. In fact, the board below made a factual finding that Nixon itself taught the use of using UWB and GPS. And furthermore, the testimony of the patent owner's president, Mr. Marchi, that they cite to, and this is at page 14 and 15 of their reply brief, Mr. Marchi says the key feature was UWB collision avoidance. Not UWB plus GPS, UWB collision avoidance, which indisputably is taught in the Grisham reference, because Grisham teaches all the requirements of claim 1. So these tests, as far as I can understand that this court has laid out in its cases, really is focused on a particular question. And the question is, if you're going to come forward with commercial success, you're going to come forward with secondary considerations of non-obviousness, we need to really understand what features or what aspect is driving it. Is it really the invention? Is it marketing acumen? Is it some other unclaimed feature? We need to get to that point to really understand the value, if any, to the secondary considerations. So they, as the patent owner, have to come forward and say, these particular features achieve this result. And they need to explain why that, how that does that. They just didn't do it. The board, I think in a well-reasoned opinion, as you walk through their opinion, looks for it. They're saying, show it to me. And it was not found there. Now, with respect to Claim 2, it is entirely a claim construction argument. They do not fight motivation to combine, do not fight the teachings of the references. The question is whether or not Claim 2 was properly construed by the court. They say location requires precise location. And the board found, no, it did not. That the, well, first, that's an unclear term. What is a precise location anyway? But also, the board said, if I read your specification, you have various levels of precision, including reasonable approximation of location. In, the board made factual findings as to the teachings of the references and found that Douglas, in fact, found the location. And if you read Douglas and if you look at the findings, they're talking about knowing what track they're on with respect to what links within three kilometers of the station. And so, an example that the patent owner given the brief is saying, hey, this is like saying you're on the 80 between Chicago and Denver. It's not really telling you anything. It's not an accurate analysis. At best, you could say this is like being on the 80 going eastbound between mile markers one and three. Because you know where you are within, with respect to this three kilometer matter. And that is, you obviously need to know something, some precision, or some level of location, because you're trying to avoid a collision. That's the whole process, the purpose of the Douglas reference. Now, with respect to claim seven, they make some arguments, which is simply an attempt to re-weigh the evidence. The board did an analysis. They made factual findings as to the teachings of Grisham and Nixon. They saw that Nixon itself taught the idea of using UWB and GPS. They relied on the testimony of our expert as to why one would be motivated to include UWB and GPS. They just don't like that evidence. They say, look at this other evidence that we have that we would say is better evidence on this point. That's just a request to re-weigh evidence and does not meet the substantial evidence standard that they would have to overcome in this case. Unless the court has questions, I'll reserve the remainder of the time from Mr. Sipko. OK. Mr. Sipko? May it please the court, Mark Sipko. I'm going to briefly address the cross-appeal issues. Grisham teaches that its collision avoidance system provides two related but different ways of informing a train of an oncoming additional train. The board's final written decision addressed only one of those. So let me ask you about that. I mean, I guess I was startled. Might be a little bit too strong, but not very. So your argument on this point in your cross-appeal from page 3 to 4, 24, 25, 26, 64 is not quite all about, but is first and mostly about Grisham, column 24, lines 25 to 29. Your petition did not rely on that in making its claim 17 argument at all. In the little background, in a paragraph about Grisham, it cites the passage, but does not make the point that this notified language of 24, 25 to 29 teaches this element. In the reply, you again, you cite the passage only as part of a C, Mr. Andrews, paragraph 192 citation behind a sentence that says, the only way it's possible for this information to get in the right hands is to be transmitted by air. But again, you don't quote the language. You don't say the language raises this issue. It's about notifying of presence and speed. Here's why that would turn into a communication by air of distance. Just nowhere there. And then you got asked about this at the oral hearing, and you basically said, right, we didn't have that on this point. So how could there be an abuse of discretion by the board to say that is not part of the case you made for claim 17? Your Honor, going right back to the petition, the argument that was made in the petition was that Grisham teaches that these impulse signals that are sent from one train to another carry information. They carry speed, distance, and I'm sorry. Sorry, that was the assertion, and it was backed by an essentially identical citation to Mr. Andrews' paragraph 192, which relies entirely on figure 22 and his assertion about what's going on in figure 22. And then that issue got litigated a little bit later with the question being, is it really the case that in order at the very end of figure 22, the receiving train to display the separation distance, it has to be sent that separation distance? And the board said, no, it just calculates it. But again, nothing about what is now the center point of your argument on the cross-appeal, which is look at this modified sentence of Grisham 24, 25 to 29. Respectfully, Your Honor, I don't think it was a modified sentence. The argument with respect to Grisham. I didn't mean the sentence was modified. The sentence has the word notified. Notified. I'm sorry. My mistake. Notified. Sorry, Your Honor. It's true that Mr. Andrews cited to figure 22. But throughout the petition, throughout his declaration supporting the petition, he was discussing the figure 21, 22 embodiment. The board appreciated that notification disclosure, that one sentence was part of that disclosure. They actually quoted it in the institution decision. They cited it in their own description of the figure 21 and 22 embodiment that was at issue in the final written decision. Now, at the oral hearing, and let me just note, there was no finding that the board rejected any argument. There was no finding of an untimely argument contrary to what was argued. I guess what I would say is, clearly but implicitly, the board said, indicated that you couldn't rely, that that paragraph in Grisham was not a presented basis for finding Claim 17 satisfied. Because the reason I think it's implicit and not explicit is it doesn't say that. The reason I think it's clear is that this came up at oral argument. And you said, yeah, that was actually not part of our Claim 17 argument. At oral argument, well, first off in the reply, we were responding to an argument that was specifically made by the patent owner in response to our petition. They didn't dispute that there was information that was passed in these impulse signals. Their only dispute was distance in figure 22 is something different from separation distance. That's the argument that we were responding to. We were trying to say, no, in this, where we're talking about passing information in these signals, the only way that you get distance on one side is if that separation distance is passed over. The board interpreted that as us saying that there is only one way that separation distance gets over. But the very next sentence in that argument talks about the way that separation distance is calculated by the second train. And all throughout Mr. Andrews' declaration, there's that discussion of how that separation distance, you receive an impulse signal, you perform the time of flight analysis. That's how separation distance is determined. It's after that in Grisham where you have this notification system disclosure. It says, OK, I've calculated as the second train, I've calculated the separation distance. Now, if the other train has the same thing, I can notify it. I can let it know what I've already calculated. It says presence and speed, but that's at the end of the discussion of calculating separation distance. That's a disclosure that's in addition to what the second train is doing. So do I understand the board correctly saying that you have to actually communicate the separation distance as opposed to the time of flight data? I don't believe the board held that. My understanding of the board's fine is they said two things. First off, it's not required that the second train send separation distance back. And we would agree with that. It's not required. And we cite that discussion in our reply brief. But the board then said, there's no reason for the second train to send the separation distance back to the first train. And they adopted an argument that was made in the cert reply by Metron there with no supporting evidence. But there is a reason. And the reason is expressed in the Grisham disclosure. It's to notify the first train of the separation distance. I'm confused. The claim itself talks about, claim 17 itself talks about time of flight calculations. Obviously, it contemplates separation distance being determined by a time of flight calculation. It doesn't seem to suggest that the actual separation distance is being communicated, because it doesn't say the separation distance is communicated, but just data representing the separation distance. So clearly, on the face of it, claim 17 talks about using time of flight data to calculate separation distance. And Grisham seems to contemplate doing that also, right? So what's the board's problem? I'm confused as to what the board is supposedly saying. There was no dispute below, Your Honor, that when the second train, it's a little bit confusing, first train, second locomotive. When the second locomotive receives an impulse signal that was sent by the first locomotive, it performs the time of flight calculation to determine the separation distance between it and that first locomotive. No dispute about that. Was the board saying there's no reason to do that? No, the board said there's no reason to take that next step. The disclosure at column 24 lines? The next step of sending the result of its calculation in the air. Back to the first train, correct, Your Honor. The only way that these trains communicate is through these impulse signals getting sent back and forth. So the board said there is no reason why the second train would send that information back to the first train, because the first train can just figure it out for itself if it gets that impulse signal. Well, the second train doesn't know that the first train is going to be able to do that. But what we do know is the collision avoidance system can be used to transfer information between people on these trains. The board found that itself with respect to claim one. It acknowledged, yes, information can be passed between people on these two trains. So the board's issue here was, after Grisham describes using the time of flight technique to calculate the separation distance, then says it should be understood that the second locomotive could then inform the first locomotive of the presence and speed, which follows immediately after the calculation of the separation distance. The board said there's no reason to do that. Well, it's a collision avoidance system. Grisham expressly discloses that the second locomotive notifies. But I guess this is what I'm recalling. So I might be wrong. When you put aside, as I think the board clearly did, that Grisham, column 24, lines 25 to 29, because you didn't rely on it, it was making the point about there is no reason to. Specifically in response to your contention that it's impossible to get the separation distance to the second train without sending that information to the second train, rather than sending other information from which the second train can calculate it. And the board said, no, that's not right. The second train can take this other information, which does not itself represent the separation distance and calculate it. Understood, Your Honor. That is how the board interpreted our argument. I'll grant you it was not a model of clarity. But all through this petition, all through the portion of the specification that we cited, and in our reply brief, we acknowledge that a train can receive an impulse signal, use the time of flight technique, and calculate separation distance. This disclosure of column 24, lines 25 to 29, comes after that. It's an additional thing. It could also be understood that the first train could be notified. We never argued that the first train couldn't figure it out for itself. It certainly can. But the claim doesn't require that you do the notification. It doesn't require that you carry the separation distance over the air all the time. It just says you've got an antenna that's capable of carrying that information. And I am well into my time. I'll reserve that minute for rebuttal, if I can. Thank you. Thank you, Your Honor. May it please the court. First, on copying, I don't feel like I answered your question before completely. There's more evidence than it just infringes. Piper hired our consulting engineer to do and execute the product that we allege is a copy. You can find all of that evidence in the record. But am I remembering right? There's some other evidence to the effect that their product was already designed with respect to the claimed elements even before the fellow came over. The MTA product is a different product. It predates Helix. It was their first attempt. Didn't work out. I don't think those projects went anywhere. What they ended up doing is hiring our consulting engineer and copying Helix. That's what they ended up doing. That's outstanding evidence of copying. That's an outstanding objective indicator and should always be considered. Grisham, all elements, not in one embodiment. They have to modify it. I think you heard a lot of that in the argument you just heard. You could. Maybe you might. Metron did. Grisham didn't. At the end of the day, they've got to grab these other pieces and get them together. On the sublimitation, GPS combined with UWB, again, that's not the invention. The invention is the entire claim. But that particular combination is described in the patent, in the text, as particularly advantageous. You can find that at column 2, lines 60 to 66, appendix 227, and 228 at column 3, lines 13 to 34. Regarding Douglas claims 2 through 4 and in the zone, again, if you look at the text, column 9, lines 25, reads a unique identification of the link, that's the path, that would follow. So it's a future path that it's talking about. Douglas doesn't track a location of anything. All it does is determine the street. Before we run out of time, could you address the cross-appeal, please? Address the cross-appeal? Yes, Your Honor. The cross-appeal, Judge Strana, you have it exactly right. There is nothing wrong with the board's analysis. It was waived by not bringing it in the petition in the first place. You can argue. What is the board's analysis? The board's analysis, they did look at the section that you referred to. And they talk about time, position, measurement, I think is in the passage that they point to. But there's nothing in there that requires transferring a distance. It doesn't talk about transferring a distance measurement. It's a time, position, determination. It's actually different than the text that they point to now. They're incorporating something else. The claim contemplates a time of flight calculation, right? That's true, Your Honor, yes. And Grisham describes a time of flight calculation. It does. So what's the problem with the argument they made? The problem is that all that you get out of a time, position, measurement is all that's transmitted is a clock time. Transmission time and a reception time. And it represents from which you can calculate distance. You can calculate the time of flight as long as you've got synchronous clocks. There's issues with time of flight. I don't want to get into it here. But the time, position method does not transmit a distance. The board properly found that. So one way, at least, I've been thinking about, I don't know whether it captures the question, though I'm not sure there was any dispute about this. Did the other side make the argument that the data sent for purposes of the recipient making the time of flight calculation represents the separation distance? I don't believe they did, Your Honor. I don't remember seeing that. I don't recall that at all. I think they just say, well, you can assume it's in there somewhere. Well, I don't know if it's a part of the petition that it's not in the joint appendix, unfortunately, which is 18 and 19, where it does seem to argue that. I'm sorry, Your Honor, I'm not. You got me off script there. But the problem is they didn't further describe this application of time of flight technique by reference to Richards. And it talks about how they described distance using a time of flight technique. I don't know. Again, that's Richards. It's a different reference. It's an incorporated reference. And they're talking about a different time of flight technique in that reference than what they're talking about in the passage they originally pointed to to the court. Grisham further describes this time of flight technique. Yeah, there are multiple time of flight techniques. Time position measurement is one. The method described in Richards is a different one. But you have to go with what they relied on in the petition, which was the time position one that they referred to, which does not transmit a distance. And the board, I think, did a pretty thorough analysis, Grisham. You can hardly say they were. There's no actual communication of the distance. The question is whether data representing distance was said. And the argument, as I understand it, is the time of flight technique does send data representing distance, right? Yeah, I think that's the argument now. It's not the argument they made then. So is the only question whether is the argument they're making now wrong? It's untimely. I would say, first, it's untimely. They should have raised that in the petition. Put aside timeliness. Is it wrong? And I have not given that any thought, particularly, on whether or not that. I don't think the time position measurement that they're talking about is a transmission of a distance. I would say it's just wrong. Because all it is is a clock time. It's not data representing a distance. The receiver has to work it out. Distance from it, right? You can, absolutely. Sure, that's the problem. But that's not data representing. And it's a problem with the board not construing the claim. And the petitioners did not offer a claim construction on that point. So again, it comes back to the petition and how they framed this argument originally. I am over time, very quickly. You cannot reweigh evidence that the board never considered. The objective indicators are always the best indicia, not obvious. Matt Trum did everything. I think you've covered that. Yeah. Matt Trum did everything right. The case should be reversed. OK, thank you. You're welcome. Thank you, Your Honor. You have one minute. Just very briefly, Your Honor, we did not argue with respect to Claim 17 about the time of flight limitation because it wasn't disputed. The only limitation of that claim that was disputed was whether or not Grisham taught actually communicating the separation distance over the air. We submit that it does. It does in the notification disclosure that was encompassed within the evidence that we cited in our reply brief. The board said it was limiting its analysis to what was in the reply brief evidence and argument in the reply brief. That evidence was in there and is consistent with the position that Petitioner took right from the very beginning, that those impulse signals can carry information, including separation distance. And the board, in finding Claim 1 unpatentable, agreed you can send information from a person on the second train to the first train in those impulse signals. Your Honors have no other questions. I thank you for your time. OK. Thank you. Thank all counsel. The case is submitted.